14-3794-cv
*Beauvoir v. Israel*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2014
No. 14-3794-cv

GARY BEAUVOIR, HUSBENE BEAUVOIR,
on behalf of themselves and all other similarly situated consumers,
*Plaintiffs-Appellants*,

*v.*

DAVID M. ISRAEL,
*Defendant-Appellee.*[*]

On Appeal from the United States District Court
for the Eastern District of New York

ARGUED: JUNE 24, 2015
DECIDED: JULY 21, 2015

Before: CABRANES, POOLER, and DRONEY, *Circuit Judges*.

---

[*] The Clerk of Court is directed to amend the official caption to conform with the above.

---

The question presented is whether money owed as a result of theft of unmetered natural gas qualifies as a "debt" for purposes of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA").

We hold that money owed as a result of theft is not an "obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a "debt" for purposes of the FDCPA. 15 U.S.C. § 1692a(5).

We thus affirm the August 7, 2014 judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*).

---

LEVI HUEBNER, Levi Huebner & Associates, PC, Brooklyn, NY, *for Plaintiffs-Appellants*.

MATTHEW J. BIZZARO, L'Abbate, Balkan, Colavita & Contini, L.L.P., Garden City, NY, *for Defendant-Appellee*.

---

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether money owed as a result of theft of unmetered natural gas qualifies as a "debt" for purposes of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA").

We hold that money owed as a result of theft is not an "obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a "debt" for purposes of the FDCPA. 15 U.S.C. § 1692a(5).

We thus affirm the August 7, 2014 judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*).

## BACKGROUND

Plaintiffs Gary and Husbene Beauvoir appeal from the District Court's August 7, 2014 judgment granting defendant's motion to dismiss and dismissing plaintiffs' complaint.

On March 8, 2013, the Beauvoirs filed their putative class action complaint against defendant David M. Israel, an attorney representing National Grid New York ("National Grid"), a company that provided natural gas to the Beauvoirs' home. The complaint alleged that Israel sent the Beauvoirs a letter on April 23, 2012, which stated that National Grid had referred the matter to him "for purposes of collection of the debt in the amount set forth above, based upon the consumption of unmetered gas" at the Beauvoirs' residence. J.A. 20. Although the letter advised the Beauvoirs of their right to dispute National Grid's claim, it did not advise them that they had thirty days to do so or state the amount of the debt. The Beauvoirs allege that these omissions violated the FDCPA. *See* 15

U.S.C. § 1692g(a).[1] The Beauvoirs also allege that the collection letter violated 15 U.S.C. § 1692e(5) and (10) because it purportedly "engag[ed] in deceptive and falsely threatening practices." J.A. 15.[2]

---

[1] Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

[2] Sections 1692e(5) and (10) provide:

Separately, in a state-court complaint filed on May 31, 2012 by National Grid against the Beauvoirs, National Grid alleged that the Beauvoirs "diverted and consumed unmetered natural gas . . . by means of unlawfully tampering with [National Grid's] gas meter to impede, impair, obstruct and prevent the said meter from performing its recording function." J.A. 54. In proceedings before the District Court, Israel asserted that the Beauvoirs had failed to state a claim under the FDCPA, because the collection action he initiated concerned an alleged *theft* of natural gas and, thus, did not concern a *debt*, as that term is defined in the statute.

On August 7, 2014, the District Court granted Israel's motion to dismiss, holding that "obtaining natural gas through meter tampering is theft and, as such, outside the scope of the FDCPA." The District Court further held that it was immaterial that the

---

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

5

Beauvoirs deny the alleged theft because "the merit[] of that claim is not a matter for the Court to decide. . . . What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay."

This appeal followed.

## DISCUSSION

### I.

As a preliminary matter, we must address whether we have jurisdiction to hear this case. Plaintiffs filed a notice of appeal out of time. Simultaneous with that late filing, plaintiffs filed a motion to extend the time to file a notice of appeal, which the District Court granted before defendant responded. Defendant then filed a motion for reconsideration. That motion remained pending in the District Court for several months while the parties briefed this appeal. Because that motion was still pending, we issued an order to show cause why this appeal should not be dismissed for lack of jurisdiction. Shortly thereafter, the District Court denied the motion for reconsideration.

The Federal Rules of Appellate Procedure do not appear to address this unusual situation. *See generally* Fed. R. App. P. 4(a). Had the motion for reconsideration remained pending in the District Court while we heard this appeal, we may very well have lacked appellate jurisdiction. If that were not the rule, and we had exercised jurisdiction, then the appeal may have overtaken the motion still pending in the District Court, the result of which may have

determined whether we had jurisdiction in the first place. In such a case, a party effectively may never be able to have a district court reconsider its grant of a motion to extend the time to file a notice of appeal.

In any event, the District Court's intervening denial of the motion for reconsideration has mooted this issue. We conclude that, in the circumstances presented, we have appellate jurisdiction.

**II.**

"We review *de novo* a district court judgment granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations in the complaint as true." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014).

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). We have held that, "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (internal quotation mark omitted).

Although we have not previously had occasion to address whether money owed as a result of theft constitutes a "debt" for purposes of the FDCPA, several of our sister circuits have addressed the question and unanimously held that liability deriving from theft or torts does not constitute a "debt" within the meaning of the FDCPA. *See Fleming v. Pickard*, 581 F.3d 922, 926 (9th Cir. 2009) ("[W]e have little difficulty concluding that Defendants' cause of action against Plaintiffs for wrongful conversion does not, as a matter of law, constitute a debt for purposes of the FDCPA."); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) ("[T]he FDCPA may be triggered only when an obligation to pay arises out of a specified 'transaction' . . . . Because Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a 'transaction' under the FDCPA."); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) ("[A]lthough a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services."); *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1168 (3d Cir. 1987) ("[N]othing in the statute or the legislative history leads us to believe that Congress intended to equate asserted tort liability with asserted consumer debt.").[3] Each

---

[3] *See also Coretti v. Lefkowitz*, 965 F. Supp. 3, 5 (D. Conn. 1997) ("A claim arising out of an alleged theft does not constitute a 'debt' under the FDCPA.").

court reasoned that the "transaction" from which the obligation to pay money arises must, by definition, be one that is consensual in nature.

We join our sister circuits and hold that money owed as a result of theft is not an "obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a "debt" for purposes of the FDCPA. 15 U.S.C. § 1692a(5). Such an obligation plainly is not one that has "arisen as a result of the rendition of a service or purchase of property or other item of value." *Beggs*, 145 F.3d at 512.

Applying this holding, we conclude that the Beauvoirs have not plausibly alleged a "debt" within the meaning of the FDCPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint alleges in only conclusory terms the existence of a "consumer debt." J.A. 11–12. This threadbare recital is contradicted by the April 23, 2012 letter from Israel, attached as an exhibit to the Beauvoirs' complaint, stating that the money owed is a result of "the consumption of unmetered gas," J.A. 20, and by National Grid's May 31, 2012 state-court complaint, alleging that the Beauvoirs "diverted and consumed unmetered natural gas . . . by means of unlawfully tampering with [National Grid's] gas meter, " J.A. 54. *See Iqbal*, 556

U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[4]

This does not mean that we accept the allegation of theft as true. As the District Court observed, "the Court need not determine whether the Beauvoirs are or are not actually liable to National Grid for theft. What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay."[5] The Beauvoirs are correct that a defendant may not evade the protections of the FDCPA

---

[4] It is well established that "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Furthermore, we may take judicial notice of the *fact* that the state-court complaint contained certain statements, albeit "not for the truth of the matters asserted." *Id.* (internal quotation marks and emphasis omitted); *see also Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 (1969) ("As the respondent suggests, we may properly take judicial notice of the record in that [separate] litigation between the same parties who are now before us."); *In re Thelen LLP*, 736 F.3d 213, 223 n.13 (2d Cir. 2013) ("This panel has taken judicial notice of the arguments raised in [a separate] appeal."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) ("[T]he Complaint's attenuated allegations of control are contradicted both by more specific allegations in the Complaint and by facts of which we may take judicial notice."); *Kaggen v. I.R.S.*, 71 F.3d 1018, 1020 (2d Cir. 1995) ("[T]his Court may appropriately take judicial notice of the fact that banks do send monthly statements to customers and that those statements tell customers to whom their money was paid and in what amounts.").

[5] *See, e.g.*, *Zimmerman*, 834 F.2d at 1164, 1166 (affirming dismissal of complaint brought by plaintiff merely "*accused*" of having illegally received microwave television signals" because plaintiff had not alleged a "debt" within the meaning of the FDCPA, even though plaintiff had "no antenna on his roof" and wires from neighbor's antenna were "not connected to anything" (emphasis supplied)).

merely by framing the basis of the alleged obligation in terms of theft or tort.[6] By the same token, however, a plaintiff may not impose the burdens of the FDCPA on an obligation outside the scope of the statute.

## CONCLUSION

We hold that money owed as a result of theft is not an "obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a "debt" for purposes of the FDCPA.

For the reasons set forth above, we **AFFIRM** the District Court's August 7, 2014 judgment.

---

[6] *Cf. Coretti*, 965 F. Supp. at 5 ("Plaintiff is correct that a debt collector cannot escape the provisions of the FDCPA by using alternative means of collecting a debt, such as through a court proceeding. However, there must be a debt.").